**GALENA OAKS CORPORATION**
v.
**Frank SCOFIELD, Collector of Internal Revenue.**

No. 14788.

United States Court of Appeals,
Fifth Circuit.

Dec. 29, 1954.

**218**

Wright Matthews, Leachman, Matthews & Gardere, Dallas, Tex., for appellant.

Grant W. Wiprud, Atty. Dept. of Justice, Washington, D. C., H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to the Atty. Gen., Brian S. Odem, U. S. Atty., Houston, Tex., Malcolm R. Wilkey, U. S. Atty., Houston, Tex., Charles L. Short, Asst. U. S. Atty., Seguin, Tex., Walter Akerman, Jr., Sp. Assts. to the Atty. Gen., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and RIVES, Circuit Judges.

RIVES, Circuit Judge.

The question in this case is whether the gain derived from the sale of 102 houses over the period from June, 1946, through August, 1947, should be accorded capital gains treatment under the provision of Section 117(j) of the Internal Revenue Code, reading in pertinent part:

"(1) *Definition of property used in the trade or business.* For the purposes of this subsection, the term 'property used in the trade or business' means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (*l*), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. * * *" 26 U.S.C.A. § 117(j) (1).

More narrowly the question may be stated as whether said houses constituted "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business" within the meaning of said subsection.

The district court in an able opinion, reported in 116 F.Supp. 333, answered the last stated question in the affirmative, and held that the gain was taxable as ordinary income. Most of the evidentiary facts are set forth in the district court's opinion and need not be repeated

here. After that opinion was rendered, the district court, upon the appellant's request, made certain additional findings of fact quoted in the margin.[1] None of the findings of evidentiary or primary facts are challenged by the appellant, but only the ultimate finding by the district court.

Appellee relies strongly on what we said when deciding a similar case in Lobello v. Dunlap, 5 Cir., 210 F.2d 465, 468: "Since the question is one of ultimate fact, the judgment of the district court should be affirmed unless found to be clearly erroneous." Several of our earlier cases were cited in support of the assertion that the question is one of ultimate fact.

It is also true, however, that the burden of showing a finding of fact "clearly erroneous" is not a measure of exact and uniform weight. Under the circumstances of each case, it depends on whether "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746. The burden is especially strong when the trial court has had the opportunity, not possessed by the appellate court, to see and hear the witnesses, to observe their demeanor on the stand, and thereby the better to judge of their credibility. Grace Bros. v. C. I. R., 9 Cir., 173 F.2d 170, 173, 174. The burden is lighter, much lighter, when we consider logical inferences drawn from undisputed facts or from documents, though the "clearly erroneous" rule is still applicable. United States v. United States Gypsum, supra; Benton v. Commissioner of Internal Revenue, 5 Cir., 197 F.2d 745, 753. Insofar, however, as the so-called "ultimate fact" is simply the result reached by processes of legal reasoning from, or the interpretation of the legal significance of, the evidentiary facts, it is "subject to review free of the restraining impact of the so-called 'clearly erroneous' rule." Lehmann v. Acheson, 3 Cir., 206 F.2d 592, 594. As succinctly stated by Professor Moore, "Findings of fact that are induced by an erroneous view of the law are not binding. Nor are findings that combine both fact and law, when there is error as to the law." 5 Moore's Federal Practice, 2d ed., Sec. 52.03(3), p. 2631. The language of Mr. Justice Frankfurter, speaking for the Court, in Baumgartner v. United States, 322 U.S. 665, 670, 671, 64 S.Ct. 1240, 1243, 88 L.Ed. 1525, is helpful:

"The conclusiveness of a 'finding of fact' depends on the nature of the materials on which the finding is based. The finding even of a so-called 'subsidiary fact' may be a more or less difficult process varying according to the simplicity of subtlety of the type of 'fact' in controversy. Finding so-called ultimate

---

1. "1:—When it was decided to sell these houses, they were placed on the market for sale and every effort made to sell them as quickly as possible. Plaintiff started selling houses on June 17, 1946, and by May 20, 1947 (less than one year), all the houses with the exception of two were sold. One of these was sold on July 14, 1947, and the other was sold on August 27, 1947.

"2:—All the houses were completed between the dates of April 15, 1943, and February 1, 1944. The first house sold was held for a period of more than three years. Some of the houses sold were held for a period of more than four years.

"3:—Employees were maintained by plaintiff for the upkeep of the property, such as mowing the lawns, plumbing, painting and wiring and keeping everything in good shape. A very light vacancy was experienced. The corporation maintained its own rental offices.

"4:—Depreciation was claimed in the income tax returns of this plaintiff for the years 1943 to 1948, inclusive, on the houses in question, and after examination by revenue agents of all returns, this depreciation was allowed as claimed. No depreciation was claimed or allowed on the 97 houses sold during 1942.

"5:—Plaintiff was notified by the Internal Revenue Agent, in whose hands its claim for refund was placed, substantially that the claim was rejected because 'Since the houses were held for sale to its customers in its ordinary trade or business, the profit is ordinary net income.' "

'facts' more clearly implies the application of standards of law. And so the 'finding of fact' even if made by two courts may go beyond the determination that should not be set aside here. Though labeled 'finding of fact', it may involve the very basis on which judgment of fallible evidence is to be made. Thus, the conclusion that may appropriately be drawn from the whole mass of evidence is not always the ascertainment of the kind of 'fact' that precludes consideration by this Court."

The district court observed with reference to the ultimate question, that "the determination of this fact issue is not free of doubt." 116 F.Supp. at page 334. Some of the many factors to be considered are recounted in Dunlap v. Oldham Lumber Co., 5 Cir., 178 F.2d 781, and in Lobello v. Dunlap, supra 210 F.2d at page 468. While the ultimate question concerns the purpose for which the property was held at the time of sale,[2] it is necessary to consider also the purpose for which it was held prior to sale.[3] Further, the question relates to whether the property was held *primarily* for sale, etc. United States v. Bennett, 5 Cir., 186 F.2d 407, 411.

The appellant insists that the facts in the case of Victory Housing No. 2 v. Commissioner of Internal Revenue, 10 Cir., 205 F.2d 371, are identical in their material aspects with the instant case. That case, however, is distinguished on its facts from a case even more closely resembling this case in Home Co., Inc., v. Commissioner of Internal Revenue, 10 Cir., 212 F.2d 637, 641, and the distinguishing principle upon which the decision turns is thus stated:

"One may, of course, liquidate a capital asset. To do so it is necessary to sell. The sale may be conducted in the most advantageous manner to the seller and he will not lose the benefits of the capital gain provision of the statute, unless he enters the real estate business and carries on the sale in the manner in which such a business is ordinarily conducted. In that event, the liquidation constitutes a business and a sale in the ordinary course of such a business and the preferred tax status is lost.[3]

"[Footnote] 3. White v. Commissioner of Internal Revenue, 5 Cir., 172 F.2d 629."

See, also, Brown v. Commissioner of Internal Revenue, 5th Cir., 143 F.2d 468.

■ Congress intended to alleviate the burden on a taxpayer whose property has increased in value over a long period of time. When, however, such a taxpayer endeavors still further to increase his profits by engaging in a business separable from his investment, it is not unfair that his gain should be taxed as ordinary income.

■ After careful consideration, we find ourselves in agreement with the opinion of the district court, 116 F.Supp. 333, and the judgment is therefore

Affirmed.

---

2. Lobello v. Dunlap, supra, 210 F.2d at page 468.

3. McGah v. Commissioner of Internal Revenue, 9 Cir., 193 F.2d 662; on second appeal, 9 Cir., 210 F.2d 769.